1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT CHRISTOPHER JIMENEZ,

11              Plaintiff,                    No. 2:10-cv-2943 KJN P

12        vs.

13   J. WHITFIELD, et al.,                    ORDER AND

14              Defendants.                   FINDINGS & RECOMMENDATIONS

15   _____/

16   I. Introduction

17              Plaintiff is a state prisoner proceeding without counsel.  Plaintiff is housed at

18   Pelican Bay State Prison ("PBSP").  In the instant complaint, filed pursuant to 42 U.S.C. § 1983,

19   plaintiff alleges that he was re-validated as a member of the Northern Structure prison gang while

20   housed at California State Prison, Solano, and placed in the security housing unit ("SHU"), in

21   violation of plaintiff's constitutional rights.  Defendants filed a motion for judgment on the

22   pleadings on the following grounds:  (1) plaintiff failed to allege facts demonstrating the gang

23   validation implicated the Fifth Amendment, the Eighth Amendment, or the Equal Protection

24   Clause of the Fourteenth Amendment; (2) plaintiff provided exhibits showing that plaintiff was

25   given adequate notice and the opportunity to be heard, the only process plaintiff was due under

26   the Fourteenth Amendment, and plaintiff failed to allege the gang validation was not supported

1   by some evidence; and (3) plaintiff's claims that defendants failed to comply with state

2   regulations, the policies and procedures of the California Department of Corrections and

3   Rehabilitation ("CDCR"), and a settlement agreement in <u>Castillo v. Terhune, et al.</u>, Case No.

4   C94-2847 MJJ (N.D. Cal. 1994) (agreement docketed Sept. 23, 2005), improperly addressed

5   plaintiff's grievance concerning gang validation, and took or failed to take other actions, do not

6   implicate plaintiff's constitutional rights.  Plaintiff filed an opposition, and defendants filed a

7   reply.[1]  For the reasons set forth below, the court recommends that defendants' motion for

8   judgment on the pleadings be granted in part and denied in part.

9   II.  <u>Background</u>

10              California prison authorities have determined that prison gangs are
                a serious threat to institutional security and have devised a system
11             for segregating gang affiliates to reduce that threat.  As will be
                seen, the process involves investigating the inmate to determine
12             whether to validate him as a gang member or associate; if he is
                validated, he then may be placed in administrative segregation
13             indefinitely.  The decision-making process is spread out among
                several different people and over a long period of time.  Thus, the
14             inmate may be investigated for many months, and may be validated
                as a gang affiliate long before a committee decides whether he
15             should be placed in administrative segregation.

16   <u>Lopez v. Valdez</u>, 2007 WL 1378017, *1 (N.D. Cal. 2007).

17              On June 7, 2007,[2] plaintiff was validated as a Northern Structure gang member by

18   the Law Enforcement and Investigative Unit ("LEIU").  (Dkt. No. 11 at 25.)[3]  The LEIU received

19   a gang validation package from Institution Gang Investigator R.L. Bond on November 21, 2006,

20   consisting of five items:

_____

21          [1] On October 18, 2011, plaintiff filed a reply to defendants' reply.  (Dkt. No. 46.)   Local
22   Rule 230(l) makes no provision for the filing of a surreply.  Accordingly, plaintiff's October 18,
     2011 filing is disregarded.
23
            [2] In the amended complaint, plaintiff states he was re-validated as a gang member on July
24   20, 2007.  (Dkt. No. 9 at 1.)

25          [3] On February 11, 2010, plaintiff's motion to present evidence (documents) was granted.
     (Dkt. No. 7, admitting Dkt. No. 6.)  On November 9, 2010, plaintiff's motion to enter certain
26   documents as exhibits was granted.  (Dkt. No. 15, admitting Dkt. No. 11.)

1. CDC 128B dated September 23, 2006 (Staff Information)
2. Confidential Memorandum dated September 5, 2006 (Informants)
3. CDC 128B dated July 27, 2006 (Communications-direct link)
4. Confidential Memorandum dated January 11, 2005 (Written Material)
5. CDC 128B dated September 9, 2006 (Tattoos)

(Id.)  However, the committee determined that item 5 (tattoos) did not meet the validation

requirements and were not used to validate plaintiff as a gang member.  (Id.)  Lt. Bond provided

a report describing the source items and recommending that plaintiff be validated.  (Dkt. No. 48

at 7.)[4]

III.  Standards for a Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides:

After the pleadings are closed -- but early enough not to delay trial
-- a party may move for judgment on the pleadings.

Fed. R. Civ. P. 12(c).  In considering a motion for judgment on the pleadings the court accepts

"all factual allegations in the complaint as true" and construes the allegations "in the light most

favorable to the non-moving party."  Fleming  v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009)

(citing Turner v. Cook, 362 F.3d 1219, 1225 (9th Cir. 2004)).  Judgment on the pleadings is

appropriate "when there is no issue of material fact in dispute, and the moving party is entitled to

judgment as a matter of law."  Fleming, 581 F.3d at 925 (citing Heliotrope Gen., Inc. v. Ford

Motor Co., 189 F.3d 971, 979 (9th Cir. 1999)).

When brought by a defendant, a Rule 12(c) motion for judgment on the pleadings

is a "means to challenge the sufficiency of the complaint after an answer has been filed."  New.

Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004).  Therefore, it is similar to a

motion to dismiss.  Id.  To the extent that a motion for judgment on the pleadings raises the

defense of failure to state a claim, the court applies the Rule 12(b)(6) standard.  McGlinchy v.

---

[4] On November 8, 2011, the court noted plaintiff's amended complaint referred to
various exhibits not appended, and that the separate exhibits provided (dkt. nos. 6 & 11) were not
marked with exhibit numbers coinciding with the amended complaint.  (Dkt. No. 47.)  Per court
order, on December 5, 2011, plaintiff filed the duly-marked exhibits.  (Dkt. No. 48.)

1   Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).  The court may dismiss a complaint for

2   failure to state a claim under Rule 12(b)(6) for two reasons:  (1) lack of a cognizable legal theory;

3   and (2) insufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police

4   Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a Rule 12(b)(6) motion to dismiss for

5   failure to state a claim, a complaint must satisfy the pleading requirements of Rule 8.  Although a

6   complaint attacked for failure to state a claim does not need detailed factual allegations, the

7   pleader's obligation to provide the grounds for relief requires "more than labels and conclusions,

8   and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp.

9   v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  To survive a motion to dismiss, a

10  complaint must contain sufficient factual matter, which, if accepted as true, states a claim to

11  relief that is "plausible on its face."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Facial

12  plausibility exists if the pleader pleads factual content that allows the court to draw the

13  reasonable inference that the defendant is liable for the misconduct alleged.  Id.  "Where a

14  complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of

15  the line between possibility and plausibility of entitlement to relief.'"  Id. (quoting Twombly, 550

16  U.S. at 557).

17         Finally, a court may consider exhibits submitted with the complaint.  Durning v.

18  First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  In addition, a "court may consider

19  evidence on which the complaint 'necessarily relies' if:  (1) the complaint refers to the document;

20  (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of

21  the copy attached to the 12(b) (6) motion."  Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).

22  A court may treat such a document as "part of the complaint, and thus may assume that its

23  contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  United States v.

24  Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Such consideration prevents "plaintiffs from

25  surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which

26  their claims are based."  Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998) (superseded by

4

1   statute on other grounds).  A "court may disregard allegations in the complaint if contradicted by

2   facts established by exhibits attached to the complaint."  <u>Sumner Peck Ranch v. Bureau of</u>

3   <u>Reclamation</u>, 823 F. Supp. 715, 720 (E.D. Cal. 1993) (citing <u>Durning</u>, 815 F.2d at 1267.)

4   IV.  <u>Fifth Amendment Claim</u>

5           Plaintiff alleges, in conclusory fashion, that his re-validation as a gang member

6   and his retention in the SHU violates the Fifth Amendment.  (Dkt. No. 9 at 1.)

7           The Fifth Amendment provides that no person "shall be compelled in any criminal

8   case to be a witness against himself."  U.S. Const. amend. V.  Plaintiff does not expressly state

9   that he was compelled to testify against himself.  Plaintiff's bald claim that his Fifth Amendment

10  rights were violated, without more, is insufficient to state a cognizable civil rights claim.

11          However, an inmate will remain in the SHU indefinitely, unless he renounces his

12  gang membership through the debriefing process.  <u>Madrid v. Gomez</u>, 889 F. Supp. 1146, 1241

13  (N.D. Cal. 1995).  As noted by defendants, plaintiff failed to allege any facts demonstrating that

14  plaintiff debriefed or that any defendant sought to compel plaintiff to debrief.  But to the extent

15  that plaintiff suggests that a requirement to debrief in order to be released from the SHU violates

16  the Fifth Amendment, such argument also fails to state a cognizable civil rights claim.  Section

17  3378.1 provides:

18          The purpose of the debriefing interview is to provide staff with
            information about the gang's structure, activities and affiliates. A
19          debriefing is not for the purpose of acquiring incriminating
            evidence against the subject. The object of a debriefing is to learn
20          enough about the subject and the subject's current gang to:  (1)
            allow staff to reasonably conclude that the subject has dropped out
21          of the gang, and (2) allow staff to reclassify the subject based upon
            the inmate's needs in conjunction with the security of the
22          institution, as well as, the safety and security of staff and other
            inmates.  A requirement of the interview phase is that the inmate
23          provides staff a written autobiography of their gang involvement,
            which is then verified by staff for completeness and accuracy.
24

25  Cal. Code Regs. tit. 15, § 3378.1(b).  Because debriefing is not for the purpose of acquiring

26  incriminating evidence against plaintiff, "the Fifth Amendment is not implicated."  <u>Medina v.</u>

                                                      5

1   <u>Gomez</u>, 1997 WL 488588, *5 (N.D. Cal. Aug. 14, 1997).  In addition, the debriefing policy

2   provides safeguards to prevent involuntary self-incrimination.  "PBSP's debriefing policy does

3   not, therefore, violate the Fifth Amendment."  <u>Id.</u>, at *5.  This rationale applies to plaintiff's

4   housing at CSP-Solano as well.

5           For all of the above reasons, plaintiff's Fifth Amendment claims should be

6   dismissed.

7   V.  <u>Eighth Amendment Claim</u>

8           In the amended complaint, plaintiff states, in conclusory fashion, that the re-

9   validation as a gang member and his retention in the SHU constitutes cruel and unusual

10  punishment in violation of the Eighth Amendment.  (Dkt. No. 9 at 1.)

11          The Eighth Amendment proscribes conditions of confinement constituting cruel

12  and unusual punishment.  The Eighth Amendment's prohibition against cruel and unusual

13  punishment imposes duties on prison officials to "provide humane conditions of confinement."

14  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).  To establish a violation of the Eighth

15  Amendment, a prisoner must show that he was, objectively, deprived of something "sufficiently

16  serious."  <u>Id.</u> at 834.  A deprivation is sufficiently serious when the prison official's act or

17  omission results "in the denial of 'the minimal civilized measure of life's necessities.'"  <u>Id.</u>,

18  quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981).  Next, the prisoner must show that the

19  deprivation occurred as a result of deliberate indifference to the inmate's health or safety; this

20  determination is premised on an assessment of the prison official's subjective state of mind.  <u>Id.</u>,

21  citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 302-03 (1991).

22          Here, plaintiff failed to address his alleged Eighth Amendment claims in his

23  opposition.  (Dkt. No. 42.)[5]  As argued by defendants, plaintiff's amended complaint fails to

24

25          [5] On September 23, 2011, plaintiff filed a second opposition, which the court disregards.
    (Dkt. No. 43.)  This document contained no substantive argument, other than to claim the instant
26  motion should be denied because the court previously found plaintiff stated a potentially

1    allege facts demonstrating that any defendant subjected plaintiff to unnecessary and wanton pain,

2    or acted with the required culpable intent.  Plaintiff failed to allege how any defendant knew of

3    and disregarded a substantial risk to plaintiff's health or safety by placing him, or retaining him,

4    in the SHU.  <u>Farmer</u>, 511 U.S. at 837.  Therefore, plaintiff's Eighth Amendment claim should

5    also be dismissed.

6    VI.  <u>Equal Protection Claim</u>

7             Plaintiff alleges, again in conclusory fashion, that his re-validation as a gang

8    member and his retention in the SHU violates the Equal Protection Clause.  (Dkt. No. 9 at 1.)

9             The Equal Protection Clause requires that persons who are similarly situated be

10    treated alike.  <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985);

11    <u>Shakur v. Schriro</u>, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be

12    established by showing that defendants intentionally discriminated against plaintiff based on his

13    membership in a protected class, <u>Comm. Concerning Cmty. Improvement v. City of Modesto</u>,

14    583 F.3d 690, 702-03 (9th Cir. 2009); <u>Serrano v. Francis</u>, 345 F.3d 1071, 1082 (9th Cir. 2003),

15    or that similarly situated individuals were intentionally treated differently without a rational

16    relationship to a legitimate state purpose, <u>Engquist v. Oregon Department of Agriculture</u>, 553

17    U.S. 591, 601-02 (2008); <u>Lazy Y Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 592 (9th Cir. 2008).

18             Plaintiff does not allege how any defendant violated plaintiff's equal protection

19    rights, either in his opposition or in the amended complaint.  Plaintiff sets forth no facts

20    supporting a claim that defendants intentionally discriminated against plaintiff based on his race,

21    or that plaintiff was intentionally treated differently than similarly situated prisoners.  Placing

22    validated gang members in the SHU furthers CDCR's "legitimate interest in precluding

23    opportunities for disruptive or gang related activity and assaults on other inmates or staff."

24    <u>Madrid v. Gomez</u>, 889 F.Supp. 1146, 1263 (N.D. Cal. 1995).  Retaining inmates in the SHU

25

26    cognizable claim.  (<u>Id.</u>)

1  until debriefing is rationally related to the CDCR's legitimate interest in addressing "the grave

2  security risk posed by prison gangs." <u>Medina</u>, 1997 WL 488588, *6. "[G]angs present a serious

3  threat to the safety and security of California prisons." <u>Madrid</u>, 889 F.Supp. at 1240. Thus,

4  plaintiff fails to state a viable equal protection claim, and such claim should be dismissed.

5  VII. <u>Miscellaneous Claims</u>

6          Plaintiff's claim, that the procedures used by prison officials to validate gang

7  members fail to comply with the procedures agreed to in <u>Castillo v. Terhune</u>, fails to state a

8  cognizable claim for a violation of plaintiff's federal rights. The violation of consent decrees,

9  settlements, or injunctions in other cases does not provide liability in this action. <u>See</u> <u>Frost v.</u>

10  <u>Symington</u>, 197 F.3d 348, 353 (9th Cir. 1999) (where litigant seeks enforcement of consent

11  decree, litigant must proceed through class counsel in the action in which consent decree

12  entered); <u>Coleman v. Wilson</u>, 912 F.Supp. 1282, 1294 (E.D. Cal. 1995) (same). In addition,

13  "alleged noncompliance with the agreement cannot be the basis for granting an individual inmate

14  relief regarding his gang validation." <u>Garcia v. Stewart</u>, 2009 WL 688887, *7 (N.D. Cal. March

15  16, 2009), citing <u>Castillo</u> Settlement Agreement § 30c. Accordingly, this claim should be

16  dismissed.

17          In addition, there is no independent cause of action under § 1983 for a violation of

18  Title 15 regulations. <u>See</u>, <u>e.g.</u>, <u>Chappell v. Newbarth</u>, 2009 WL 1211372, at *9 (E.D. Cal. May

19  1, 2009) (holding that there is no private right of action under Title 15 of the California Code of

20  Regulations); <u>Parra v. Hernandez</u>, 2009 WL 3818376, at **2, 8 (S.D. Cal. Nov. 13, 2009)

21  (same). Plaintiff alleges that defendants failed to comply with various Title 15 regulations. (Dkt.

22  No. 9 at 3-6.) "To the extent that the violation of a state law amounts to the deprivation of a

23  state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection

24  1983 offers no redress." <u>Sweaney v. Ada County, Idaho</u>, 119 F.3d 1385, 1391 (9th Cir. 1997);

25  <u>see also</u> <u>Davis v. Kissinger</u>, 2009 WL 256574, *12 n. 4 (E.D. Cal. Feb. 3, 2009) ("there is not a

26  single reported state or federal case permitting an independent cause of action pursuant to these

1  regulations [Cal. Code Regs. tit. 15 § 3268]").  Similarly, there is no liability under § 1983 for

2  violating prison policy.  Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009).  Therefore,

3  plaintiff's claims alleging violations of Title 15 regulations should be dismissed.

4         In claim nine, plaintiff alleges defendant Whitfield gathered four source items and

5  validated plaintiff using his personal IGI knowledge and resources.  (Dkt. No. 9 at 3.)  However,

6  the documentary evidence provided by plaintiff contradicts this claim.  Plaintiff was validated on

7  June 7, 2007, as a Northern Structure gang member by the LEIU, after review and consideration

8  of source items provided by Lt. Bond.  (Dkt. No. 11 at 25.)  Accordingly, plaintiff's claim is

9  unavailing.

10        Plaintiff appears to allege that some defendants are liable based on their role in the

11 inmate grievance process.  However, prisoners have no stand-alone due process rights related to

12 the administrative grievance process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988);

13 see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty

14 interest entitling inmates to a specific grievance process).  Put another way, prison officials are

15 not required under federal law to process inmate grievances in a specific way or to respond to

16 them in a favorable manner.  Because there is no right to any particular grievance process,

17 plaintiff cannot state a cognizable civil rights claim for a violation of his due process rights based

18 on allegations that prison officials ignored or failed to properly process grievances.  See, e.g.,

19 Wright v. Shannon, 2010 WL 445203 at *5 (E.D. Cal. Feb.2, 2010) (plaintiff's allegations that

20 prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the

21 First Amendment); Walker v. Vazquez, 2009 WL 5088788, *6-7 (E.D. Cal. Dec.17, 2009)

22 (plaintiff's allegations that prison officials failed to timely process his inmate appeals failed to

23 state a cognizable claim under the Fourteenth Amendment); Williams v. Cate, 2009 WL

24 3789597, *6 (E.D. Cal. Nov.10, 2009) ("Plaintiff has no protected liberty interest in the

25 vindication of his administrative claims.").  Thus, plaintiff's claims challenging the processing of

26 his inmate grievances should also be dismissed.

1    For all of the above reasons, plaintiff's miscellaneous claims should be dismissed.

2    VIII.   Fourteenth Amendment - Due Process Claim

3    The gravamen of plaintiff's amended complaint is that the re-validation of his

4    gang status violated his due process rights under the Fourteenth Amendment.  This assertion is

5    confirmed by plaintiff's opposition, which is focused on alleged violations of plaintiff's due

6    process rights, as opposed to the alleged constitutional violations set forth in the amended

7    complaint and addressed above.

8    1.  Legal Standards

9    The Due Process Clause protects plaintiff against the deprivation of liberty

10   without the procedural protections to which he is entitled under the law.  Wilkinson v. Austin,

11   545 U.S. 209, 221 (2005).  Protected liberty interests arise from the Fourteenth Amendment's

12   Due Process Clause itself, or from state laws or regulations deemed to have created a liberty

13   interest cognizable as a civil right.  Meachum v. Fano, 427 U.S. 215, 224-27 (1976).

14   The Due Process Clause itself does not confer on inmates a liberty interest in

15   avoiding more adverse conditions of confinement, id. at 221-22 (citations and quotation marks

16   omitted), and under state law, the existence of a liberty interest created by prison regulations is

17   determined by focusing on the nature of the condition of confinement at issue, id. at 222-23

18   (citing Sandin v. Conner, 515 U.S. 472, 481-84 (1995), quotations omitted.)  Liberty interests

19   created by prison regulations are generally limited to freedom from restraint which imposes

20   atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

21   Wilkinson, 545 U.S. at 221 (citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v.

22   Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

23   The assignment of validated gang members and associates to the SHU is an

24   administrative measure rather than a disciplinary measure and is "essentially a matter of

25   administrative discretion."  Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz

26

1  v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)).[6]  As a result, prisoners are entitled to the

2  minimal procedural protections of adequate notice, an opportunity to be heard, and periodic

3  review.  Bruce, 351 F.3d at 1287 (citing Toussaint v. McCarthy, 801 F.2d 1080, 1100-01 (9th

4  Cir. 1986), abrogated in part on other grounds by Sandin, 515 U.S. at 472)).  In addition to these

5  minimal protections, there must be "some evidence" supporting the decision.  Id. (citing

6  Superintendent v. Hill, 472 U.S. 445, 454 (1985)).  The "some evidence" standard sets a low bar,

7  consistent with the recognition that assignment of inmates within prisons is "essentially a matter

8  of administrative discretion," subject to "minimal legal limitations."  Bruce, 351 F.3d at 1287

9  (citing Toussaint, 801 F.2d 1080, with respect to the minimal limitations).  A single piece of

10  evidence may be sufficient to meet the "some evidence" requirement, if that evidence has

11  "sufficient indicia of reliability."  Id., at 1288.  In applying this standard the court is not required

12  to "examine the entire record, independently assess witness credibility, or reweigh the evidence;

13  rather, 'the relevant question is whether there is any evidence in the record that could support the

14  conclusion.'"  Bruce, 351 F.3d at 1287 (citing Hill, 472 U.S. at 455-56).

15            2.  Plaintiff's Allegations

16            In the amended complaint, plaintiff alleges he did not receive 24 hour written

17  notice for the gang validation hearing.  Plaintiff contends he was not provided an opportunity to

18  air his views on the issue because he was not in his cell on October 17, 2006, when defendant

19  Whitfield came to plaintiff's cell and stated that plaintiff refused to come out to discuss the gang

20  validation.  Finally, liberally construed, it appears plaintiff contends the gang validation was not

21  supported by some evidence having some indicia of reliability.

22  ////

23  

24        [6]  Thus, Wolff v. McDonnell, 418 U.S. 539 (1974), which requires more stringent
procedural protections is not applicable because the placement in the SHU for gang affiliation is
25  administrative, rather than disciplinary, segregation.  See Munoz, 104 F.3d at 1098 (suspected
gang members are placed in SHU "to preserve order in the prison and protect the safety of all
26  inmates.")

3. <u>Analysis</u>

           a. <u>Notice</u>

          In the amended complaint, plaintiff alleges he was not provided 24 hour written notice in advance of the opportunity to express his views.  (Dkt. No. 9 at 2.)  However, as argued by defendants, <u>Toussaint</u>, 801 F.2d at 1100-01, does not require plaintiff to be provided with written notice under these circumstances.  Due process requires only adequate notice.  Here, the documentary evidence provided by plaintiff demonstrates that defendant Whitfield provided plaintiff notice on October 16, 2006.  (Dkt. No. 48 at 4.)  In opposition, plaintiff now claims that defendant Whitfield gave plaintiff notice by throwing the papers into plaintiff's cell, and telling plaintiff that Whitfield validated plaintiff.  (Dkt. No. 42 at 2.)  The record evidence provided by plaintiff contradicts plaintiff's allegations in the amended complaint, and plaintiff's opposition confirms that defendant Whitfield was at plaintiff's cell on October 16, 2006, and provided plaintiff papers, and told plaintiff Whitfield validated him.  Plaintiff does not dispute the time.  Thus, this court finds that plaintiff was provided adequate notice, and defendants are entitled to judgment on the pleadings on this claim.

           b. <u>Opportunity to Air Views</u>

          The documentary evidence provided by plaintiff also states that plaintiff was given the opportunity to air his views.  The CDCR-128B form completed by defendant Whitfield states:

> On October 17, 2006, at approximately 1200 hours I arrived at Administrative Segregations Unit 9, cell 116 and informed [plaintiff] he needed to exit his cell to discuss his validation package.  [Plaintiff] refused to exit his cell stating "I refuse to come out."  I again informed [plaintiff] he needed to exit his cell to discuss his validation package.  [Plaintiff] again stated "I refuse to come out."

(Dkt. No. 48 at 4.)  Defendants argue that the 128B form completed by defendant Whitfield trumps plaintiff's claim that he was not in the cell, and ask the court to grant judgment on the

////

1   pleadings on this claim.[7]

2           However, plaintiff provides a copy of a Rules Violation Report ("RVR") from

3   October 17, 2006, which confirms that plaintiff was in a rules violation hearing at 10:33 a.m.

4   (Dkt. No. 48 at 5.)  Although the RVR does not reflect the time the hearing was adjourned, the

5   record is insufficiently developed to allow the court to determine the length of the hearing, and

6   whether plaintiff could have returned to his cell by "approximately 1200 hours" on the date in

7   question.  Plaintiff argues that he was double-celled, suggesting defendant Whitfield might have

8   talked to plaintiff's cellmate.  Plaintiff also argues that the September 23, 2006 128B form signed

9   by defendant Whitfield, and used to re-validate plaintiff as a gang member, also states that

10  plaintiff refused to come out to talk to Whitfield.  (Dkt. No. 9 at 2.)  Plaintiff appears to argue

11  that the fact that both 128B forms state plaintiff refused to come out and talk to plaintiff suggests

12  defendant Whitfield abused or misused his authority and violated plaintiff's rights.  However, the

13  forms could be viewed another way; it could simply mean plaintiff refused to exit his cell on two

14  separate occasions.

15          Plaintiff's contention that he was not in his cell on October 17, 2006, when

16  defendant Whitfield presented around noon is reasonably supported by the documentary evidence

17  showing plaintiff was in a hearing at 10:33 that morning, raising a genuine issue of material fact.

18  Thus, the court recommends that defendants' motion for judgment on the pleadings on this claim

19  be denied.  However, this denial is without prejudice to a motion for summary judgment should

20  ─────────────────────

21      [7]  Defendants also argue that plaintiff failed to raise the "opportunity to air his views"
    claim in his administrative grievances.  (Dkt. No. 45 at 7.)  However, in his administrative

22  appeals, plaintiff did allege his due process rights were violated, noted he was entitled to notice
    and an opportunity to be heard, and that he was not provided an opportunity to file a response to

23  each validation document.  (Dkt. No. 6 at 2, 6.)  Liberally construed, this was sufficient for
    purposes of exhaustion of administrative remedies.  See Griffin v. Arpaio, 557 F.3d 1117, 1120

24  (9th Cir. 2009) (a prisoner must provide enough factual specificity in his or her grievance such
    that "it alerts the prison to the nature of the wrong for which redress is sought."); Castro v.

25  Terhune, 2010 WL 724683 (N.D. Cal. 2010) (in case challenging a gang validation, "[i]t was
    only required that [plaintiff] alert the prison officials to the underlying wrong.  This he did.

26  Moreover, the prison officials' responses to plaintiff's grievance demonstrate that prison officials
    were aware.")  Plaintiff included this claim in the amended complaint.  (Dkt. No. 9 at 2.)

1  defendant Whitfield be able to provide evidence contradicting plaintiff's allegation.[8]  Inasmuch

2  as this claim is pled only as to defendant Whitfield (dkt. no. 9 at 2-3), this claim survives as to

3  defendant Whitfield only.

4                                c. <u>Some Evidence</u>

5           Finally, the court turns to plaintiff's claim that his validation as a gang member

6  was not supported by some evidence.  In claim two, plaintiff challenges defendant Whitfield's

7  reference to a photograph of plaintiff's tattoo.  (Dkt. No. 9 at 2.)  In claim three, plaintiff claims

8  that two source items linking plaintiff and inmate Richard Molina, who was plaintiff's former

9  cellmate, should only be counted as one source.  (<u>Id.</u> at 2.)  In claim eight, plaintiff claims that

10  the October 17, 2006 128B was insufficient because it did not specify any gang-related activity.

11  (<u>Id.</u> at 3.)  Finally, plaintiff argues that "false, unreliable, and insufficient hearsay and opinion

12  data were used to validate plaintiff, and that "because debriefing informants have self-serving

13  motives to fabricate evidence to achieve favors from prison staff, [the] evidence used to validate

14  plaintiff is incapable of establishing that he knowingly and actively personally promoted . . . or

15  assisted any gang."  (Dkt. No. 9 at 7.)

16           Defendants argue that plaintiff fails to allege any facts showing the gang

17  validation was not based on some evidence, and that the four sources used to validate plaintiff

18  meet the CDCR's validation requirements.  (Dkt. No. 37-1 at 11.)

19           In opposition, plaintiff contends that defendant Whitfield did not check to see how

20  many other inmates had plaintiff's name, "Robert C. Jimenez," or were nicknamed "Boo Boo,"

21  which is plaintiff's nickname, and the nickname found on a birthday card of a validated card

22  member.  (Dkt. No. 42 at 8.)  Plaintiff also contends defendant Whitfield did not find out what

23

24        [8]  For example, defendants may have access to evidence that might show plaintiff was in his cell on October 17, 2006 at noon.  Usually logs are maintained in the SHU that document the

25  movement of inmates.  In addition, there may be evidence confirming how long the RVR hearing on October 17, 2006 lasted, or one of the attendees at the hearing may be able to confirm the

26  length of that hearing, or the time plaintiff was escorted back to his cell.

1    the word "Boo Boo" means.  (Id.)  Plaintiff also claims, for the first time, that inmate Molina was

2    not a validated gang member on July 27, 2006, or January 11, 2005.  (Id. at 8, 9.)  Finally,

3    plaintiff contends that the source stating that a confidential informant identified plaintiff as a

4    gang member is unreliable because "informants have self-serving motives to fabricate evidence

5    against plaintiff" to receive favors from prison staff.  (Dkt. No. 42 at 9.)

6            As noted above, the some evidence standard is minimal.  The decision to place

7    plaintiff on indeterminate SHU status based on gang affiliation need only be supported by "some

8    evidence."  Bruce, 351 F.3d at 1287.  Under this standard the court does not "examine the entire

9    record, independently assess witness credibility, or reweigh the evidence."  Id.  Pursuant to Title

10   15 an inmate who has been classified as inactive may be removed from the general population

11   "based upon one reliable source item identifying the inmate as an active gang member or

12   associate of the prison gang. . . ."  Cal. Code. Reg. tit 15, § 3378(f).

13           First, two of plaintiff's claims are refuted by the documentary evidence provided

14   by plaintiff.  The source items were reviewed by IGI Lt. Bond, who forwarded the initial five

15   source items, and opined that plaintiff is a member of the Northern Structure prison gang.  (Dkt.

16   No. 48 at 7.)  However, plaintiff was only validated on the following four source items:

17             1. CDC 128B dated September 23, 2006 (Staff Information)
               2. Confidential Memorandum dated September 5, 2006 (Informants)
18             3. CDC 128B dated July 27, 2006 (Communications-direct link)
               4. Confidential Memorandum dated January 11, 2005 (Written Material)
19

20   (Dkt. No. 11 at 25.)  Thus, plaintiff's claim that the LEIU considered plaintiff's tattoo in

21   validating plaintiff is unavailing, because the 128B referencing the tattoo (source 5) was not

22   used.  (Id.)  Plaintiff's claim that the October 17, 2006 128B was insufficient is also unavailing,

23   because the October 17, 2006 128B was not used to validate plaintiff.

24           The regulations require at least one of the source items to "be a direct link to a

25   current or former validated member or associate of the gang," Cal. Code Regs. tit. 15

26   § 3378(c)(4).  Plaintiff's claim that two of the source items linking plaintiff to inmate Molina

should only be counted as one source is unavailing because even a single source of information

can be sufficient to satisfy the federal due process "some evidence" standard.  See Bruce, 351

F.3d at 1288.  Plaintiff's challenge to the birthday card source is unavailing because due process

only requires that there be "some evidence" in the record that could support the conclusion

reached by the prison decision-makers, Hill, 472 U.S. at 455-56; the evidence does not have to

logically preclude any other conclusion, id. at 457.[9]  Plaintiff was formerly housed with inmate

Molina, and plaintiff does not dispute that he is known by the nickname "Boo Boo."  In addition,

plaintiff's new claim that inmate Molina was not a validated gang member on July 27, 2006, or

January 11, 2005, is refuted by the 128B signed on October 17, 2006 by Lt. Bond.  (Dkt. No. 48

at 7.)  But even taking plaintiff's allegations as true, two other sources serve as some evidence.

          Finally, plaintiff's arguments that confidential informants are unreliable because

they have self-serving motives to fabricate information is sufficient to state a civil rights claim as

to source 4; although defendants argue that plaintiff fails to allege specific facts to support his

claims, given the cursory description of the source and its confidentiality, it is difficult to imagine

how plaintiff could do so.  If there were no other source evidence used in the validation, the court

would hold an *in camera* review of the confidential information.  Here, however, there were

three other sources used to validate plaintiff.

          Plaintiff's amended complaint and the exhibits provided by plaintiff demonstrate

that there was some evidence that supports the decision that plaintiff was active in the prison

gang at the time he was removed from the general population.  The source items fit within the

CDCR's criteria for evidence of association that could be used for validation under the

regulation. Cal. Code Regs. tit. 15 § 3378(c)(8).  For example, source item one was tied to gang

kites recovered on July 7, 2006, that described guidelines for members of the Northern Structure

---

[9]  Moreover, the court may not make its own assessment of the credibility of witnesses or reweigh the evidence.  Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (citing Hill, 472 U.S. at 455).

Gang.  (Dkt. No. 48 at 3.)  This item was a sufficiently reliable connection with gang activity.  Although evidence of criminal activity may be used to validate an inmate, it is not the only kind of evidence that may be used.  See Cal. Code Regs. tit. 15 § 3000 ("gang" defined), § 3378(c) (gang involvement investigation and sources).

In any event, the number of sources is irrelevant to the federal due process analysis which considers whether there is "some evidence" to support the determination without regard for the particular number of sources.  The state regulation's requirements concerning sources is a matter of state law and does not dictate the outcome of the federal due process analysis.  Federal due process is satisfied by a single source of sufficiently reliable information.  See Bruce, 351 F.3d at 1288.  As set forth above, the court finds that the documentary evidence provided by plaintiff meets the "some evidence" standard and was sufficiently reliable to satisfy due process standards.  Therefore, defendants are entitled to judgment on the pleadings on plaintiff's "some evidence" claim.

IX.  Conclusion

Accordingly, the court recommends that defendants' motion for judgment on the pleadings be denied, without prejudice, as to plaintiff's claim that defendant Whitfield failed to provide plaintiff an opportunity to air his views, and be granted in all other respects.  All the defendants, except defendant Whitfield, should be granted judgment on the pleadings.

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case; and

IT IS HEREBY RECOMMENDED that:

1.  Defendants' August 25, 2011 motion for judgment on the pleadings (dkt. no. 37) be denied without prejudice as to plaintiff's claim that defendant Whitfield failed to provide plaintiff an opportunity to air his views; and

2.  Defendants' motion (dkt. no. 37) be granted in all other respects.  All the defendants, except defendant Whitfield, should be granted judgment on the pleadings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  January 24, 2012


KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

jime2943.jop