1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                    FOR THE EASTERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  ROBERT CHRISTOPHER JIMENEZ, | No.  2:10-cv-2943 KJM KJN P |
| 12             Plaintiff, | |
| 13      v. | ORDER AND FINDINGS AND |
| 14  J. WHITFIELD, et al., | RECOMMENDATIONS |
| 15             Defendants. | |

16

17   I.  Introduction

18         Plaintiff is a state prisoner, proceeding without counsel.  Defendants move to dismiss this

19   action.  For the reasons stated below, the motion should be partially granted.

20   II.  Procedural Background

21         On appeal, following settlement negotiations, the parties agreed that plaintiff would

22   withdraw the appeal without prejudice to its reinstatement, to allow the district court to vacate

23   certain dispositive orders.  (ECF No. 88-2 at 2.)  In the parties' joint motion to vacate judgments

24   and modify dispositive orders, plaintiff's claims were identified as:

25              • Mr. Jimenez's Fifth and Fourteenth Amendment due process
               rights were violated because he was not given the requisite
26             opportunity to be heard before he was validated as a member of a
               prison gang;
27
               • Mr. Jimenez's Fifth and Fourteenth Amendment due process
28             rights were violated because the evidence that was used to validate

                                                    1

1
2

> him was legally insufficient to constitute evidence of gang activity
> and serve as a basis for validation; and

3
4

> • Mr. Jimenez's Eighth Amendment rights were violated by his
> validation and his indefinite confinement to SHU, the deprivation
> of necessary medical care in connection with hepatitis C, and the
> named Defendants' alleged indifference.

5   (ECF No. 88 at 2.)  This action was reopened following the district court's order vacating the

6   judgment, denying defendants' motion for judgment on the pleadings, and granting plaintiff leave

7   to file an amended pleading "for the purpose of pleading additional facts to support his claim that

8   defendants violated his Eighth Amendment rights."  (ECF No. 90 at 2.)  On December 16, 2014,

9   the undersigned confirmed that two claims should be renewed in any amended pleading:

10
11
12

> (1) it is undisputed that there is a material dispute of fact as to
> plaintiff's claim that defendant Whitfield denied plaintiff an
> opportunity to be heard regarding purported evidence used to
> classify him as a gang member, and that plaintiff is entitled to a jury
> trial on such claim; and

13
14

> (2) plaintiff's claim that his due process rights were violated by
> defendant Whitfield when plaintiff was validated as a gang member
> in the absence of sufficient evidence.

15   (ECF No. 94 at 3.)  Plaintiff was granted leave to file a second amended complaint to plead

16   additional facts to support his Eighth Amendment claims.  (ECF No. 94 at 3.)  Plaintiff was

17   informed that § 1983 requires "an actual connection or link between the actions of the defendants

18   and the deprivation alleged."  (ECF No. 94 at 3.)  Plaintiff was also informed of the objective and

19   subjective components of an Eighth Amendment claim brought under Farmer v. Brennan, 511

20   U.S. 825, 832 (1994).  (ECF No. 94 at 4.)  In addition, plaintiff was provided a copy of his

21   appellate counsel's opening brief pertinent to plaintiff's Eighth Amendment claims.  (ECF No. 94

22   at 5.)

23       On January 8, 2015, the undersigned addressed the pleading deficiencies in plaintiff's

24   second and third amended complaints, and noted that plaintiff again failed to link or connect each

25   named defendant to the alleged Eighth Amendment violations.  (ECF No. 100 at 2.)

26       On September 2, 2015, the undersigned screened plaintiff's fourth amended complaint,

27   and again found that plaintiff failed to allege sufficient facts to support his Eighth Amendment

28   claims.  (ECF No. 102.)  Specifically, the undersigned noted that plaintiff's conclusory statement

1   that defendants were "fully aware" of the conditions, "standing alone, was insufficient to

2   demonstrate that each defendant acted with the requisite state of mind, or to satisfy plaintiff's

3   pleading burden," citing, *inter alia*, Cervantes v. Adams, 2013 WL 491559, at *1 (9th Cir. 2013)

4   (holding that district court had properly dismissed a claim that confinement in the SHU

5   constituted cruel and unusual punishment because the plaintiff failed to allege facts sufficient to

6   show that defendants knew of and disregarded an excessive risk of harm to his health or safety).

7   (ECF No. 102 at 9.)

8          On September 22, 2015, plaintiff filed his fifth amended complaint in which he alleged

9   violation of his Eighth and Fourteenth Amendment due process rights related to his validation as

10   a gang member and subsequent long term detention in the Secured Housing Unit ("SHU").  (ECF

11   No. 104.)  Specifically, plaintiff renewed his due process claim that defendant Whitfield failed to

12   provide plaintiff an opportunity to be heard prior to his gang validation on June 7, 2007.  Plaintiff

13   renewed his claims that defendants Whitfield and Bond failed to ensure the source items bore

14   some indicia of reliability, arguing that there was not "some evidence" to support the decision to

15   validate him as a gang member.[1]  Plaintiff also added the following due process claims based on

16   his allegation that the gang validation was wrongfully decided:  defendants Melgoza, Singh, and

17   Grannis reviewed plaintiff's administrative appeals concerning the alleged wrongful validation

18   and denied plaintiff's right to due process by using the same information reviewed by defendant

---

[1]   On June 7, 2007, plaintiff was validated as a Northern Structure gang member by the Law
Enforcement and Investigative Unit ("LEIU") at Pelican Bay State Prison.  (ECF No. 11 at 25.)  The
LEIU received a gang validation package from Institution Gang Investigator R.L. Bond on November
21, 2006, consisting of five items:

     1. CDC 128B dated September 23, 2006 (Staff Information)
     2. Confidential Memorandum dated September 5, 2006 (Informants)
     3. CDC 128B dated July 27, 2006 (Communications-direct link)
     4. Confidential Memorandum dated January 11, 2005 (Written Material)
     5. CDC 128B dated September 9, 2006 (Tattoos)

(ECF No. 11 at 25.)  However, the committee determined that item 5 (tattoos) did not meet the
validation requirements and were not used to validate plaintiff as a gang member.  (Id.)  Lt. Bond
provided a report describing the source items and recommending that plaintiff be validated.  (ECF
No. 48 at 7.)

3

1  Bond; defendant Sisto was the chief decisionmaker, and defendant Sequira questioned plaintiff

2  about his gang membership; and defendants Sisto and Sequira were involved in the decision to

3  continue plaintiff's SHU detention, despite the alleged wrongful validation, by allegedly ratifying

4  the wrongful gang validation.

5       In addition, plaintiff claimed he suffered indefinite and solitary housing in the SHU at

6  California State Prison, Solano ("CSP-SOL), and Pelican Bay State Prison ("PBSP").

7  Specifically, plaintiff alleged the indefinite SHU housing deprived him of critical medical

8  treatment required for his Hepatitis C at PBSP, and that, as a result, his health worsened and he

9  sustained permanent physical injury.  Also, plaintiff contended that he had no access to education,

10  and that the SHU at CSP-SOL had a roof that leaks when it rains, air circulation and temperature

11  controls that didn't work for months, and that the yards where inmates were strip-searched were

12  covered in fungus.  All of the named defendants were employed at CSP-SOL.

13       On June 13, 2016, defendants filed their motion to dismiss.  Plaintiff opposed the motion,

14  and defendants filed a reply.  (ECF Nos. 115-17.)

15  III.  Motion to Dismiss

16       A.  Legal Standard

17       Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on

18  the failure to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).  A

19  motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.

20  See Parks Sch. of Bus. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a

21  motion, a court must take all allegations of material fact as true and construe them in the light

22  most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted

23  inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  Cousins v. Lockyer, 568 F.3d

24  1063, 1067 (9th Cir. 2009).  Thus, "a plaintiff's obligation to provide the "grounds" of his

25  "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of

26  the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

27  555.

28  ////

1    In evaluating a Rule 12(b)(6) motion, the issue is "not whether a plaintiff will ultimately

2    prevail, but whether the claimant is entitled to offer evidence to support the claims" advanced in

3    his or her complaint.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  While "a complaint need not

4    contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is

5    plausible on its face.'"  Cousins, 568 F.3d at 1067 (9th Cir. 2009).  "A claim has facial

6    plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

7    inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662

8    (2009); see also Bell Atlantic Corp., 550 U.S. at 556.  "The plausibility standard is not akin to a

9    'probability requirement,' but it asks for more than sheer possibility that a defendant acted

10    unlawfully."  Id.

11    In deciding whether to dismiss, a court may consider only the facts alleged in the

12    complaint, documents attached as exhibits or incorporated by reference in the complaint, and

13    matters of which the court may take judicial notice.  See U.S. v. Ritchie, 342 F.3d 903, 908 (9th

14    Cir. 2003) ("A court may . . . consider certain materials -- documents attached to the complaint,

15    documents incorporated by reference in the complaint, or matters of judicial notice -- without

16    converting the motion to dismiss into a motion for summary judgment.").

17    "[T]o ensure that pro se litigants do not lose their right to a hearing on the merits of their

18    claim due to ignorance of technical procedural requirements [,]" the pleadings of pro se litigants

19    "are liberally construed, particularly where civil rights claims are involved."  Balistreri v. Pacifica

20    Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  However, a court's "liberal interpretation of a

21    civil rights complaint may not supply essential elements of [a] claim that were not initially pled."

22    Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  Thus, a pro se

23    plaintiff's complaint which offers only "vague and conclusory allegations of official participation

24    in civil rights violations" does not state a claim "sufficient to withstand a motion to dismiss."  Id.

25    B.  Request for Judicial Notice

26    Defendants request judicial notice of plaintiff's state court filings and orders, as follows:

27    1.  Petition for Writ of Habeas Corpus, filed on March 24, 2009, in Del Norte County

28    Superior Court, Case HCPB 09-5058.  (ECF No. 115-2 at 4-7.)

2. Order to Show Cause Re: Habeas Corpus, filed on April 9, 2009, in Del Norte County Superior Court, Case HCPB 09-5058.  (ECF No. 115-2 at 9.)

3. Return to the Order to Show Cause; Memorandum of Points and Authorities, filed on June 26, 2009, in Del Norte County Superior Court, Case HCPB 09-5068.  (ECF No. 115-2 at 11-22.)

4. Traverse to Respondent's Return, filed on June 23, 2009, in Del Norte County Superior Court, Case HCPB 09-5068.  (ECF No. 115-2 at 24-34.)

5. Order Denying Petition for Writ of Habeas Corpus and Discharging Order to Show Cause, filed on July 14, 2009, in Del Norte County Superior Court, Case HCPB 09-5068.  (ECF No. 115-2 at 36.)

6. First Amended Complaint, filed on November 5, 2009, in the Northern District of California, Case C 09-2328.  (ECF No. 115-2 at 38-59.)

7. Order of Service, filed on July 28, 2010, in the Northern District of California, Case C 09-2328.  (ECF No. 115-2 at 61-66.)

8. Order Granting Motion for Summary Judgment, filed on July 25, 2011, in the Northern District of California, Case C 09-2328.  (ECF No. 115-2 at 68-78.)

9. Judgment, filed on July 25, 2011, in the Northern District of California, Case C 09-2328.  (ECF No. 115-2 at 80.)

In his opposition, plaintiff did not object to judicial notice of the above documents, and it appears that they are proper subjects for such notice.  See Headwaters Inc. v. United States Forest Service, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (taking judicial notice of docket in another case); Mullis v. United States Bankruptcy Court, 828 F.2d 1385, 1388 & n.9 (9th Cir. 1987) (taking judicial notice of "pleadings, orders and other papers on file in the underlying bankruptcy case").  Accordingly, defendants' request for judicial notice is granted.

C. Res Judicata

Defendants argue that plaintiff's Eighth Amendment claims concerning treatment for his Hepatitis C in the SHU at PBSP as well as his due process claims are barred by the doctrine of res judicata.

6

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"  Taylor v. Sturgell, 553 U.S. 880, 892 (2008). It is well settled that the rules of preclusion apply with equal measure to section 1983 actions. See Allen v. McCurry, 449 U.S. 90, 105 (1980).  In determining whether a state court decision is preclusive, federal courts are required to refer to the preclusion rules of the relevant state. Miofsky v. Superior Court of California, 703 F.2d 332, 336 (9th Cir. 1983).  Under California law, res judicata applies where:

> (1) the issues decided in the prior adjudication were identical to the issues raised in the present action, (2) the prior proceeding resulted in a final judgment on the merits, and (3) the party against whom the plea is raised was a party or was in privity with a party to the prior adjudication.

Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n, 60 Cal. App. 4th 1053 (Cal. Ct. App. 1998).  In determining whether the issues raised in a prior case are identical to the ones raised in the present action California courts apply the 'primary rights' theory under which the violation of one primary right gives rise to a single cause of action.  Slater v. Blackwood, 15 Cal. 3d 791, 795 (1975).  Specifically,

> [A] cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty.  Claims are 'identical' if they involve the same 'primary right.'

Acuna v. Regents of Univ. of Cal., 56 Cal. App. 4th 639 (Cal. Ct. App. 1997).  If this cause of action test is satisfied, then the same primary right is at stake, even if in the later suit the plaintiff pleads different theories of recovery, seeks different forms of relief, and/or adds new facts supporting recovery.  Brodheim v. Cry, 584 F.3d 1262, 1268 (9th Cir. 2009); see also Gonzales v. California Dep't of Corr., 739 F.3d 1226, 1232 (9th Cir. 2014) ("California's doctrine of claim preclusion does not require identity of relief sought").  "However . . . a given set of facts may give rise to the violation of more than one primary right, thus giving a plaintiff the potential of two separate lawsuits against a single defendant."  Sawyer v. First City Fin. Corp., 177 Cal. Rptr. 398, 403 (Cal. Ct. App. 1981) (internal quotation marks omitted).

////

1    Finally, a party has had a full and fair opportunity to litigate if the state proceedings

2    satisfied the minimum requirements of the Fourteenth Amendment's Due Process Clause.

3    Kremer v. Chem. Constr. Corp., 456 U.S. 461, 481 (1982).

4                    i.  Eighth Amendment - Treatment for Hepatitis C

5    In his fifth amended complaint, plaintiff alleges that the indefinite SHU housing at PBSP

6    deprived him of critical medical treatment required for his Hepatitis C, and that, as a result, his

7    health worsened and he sustained permanent physical injury.  In his opposition, plaintiff states he

8    was not provided proper Hepatitis C treatment while housed in the PBSP SHU in 2011.  (ECF

9    No. 116 at 1.)  Plaintiff argues that his complaint "differ[s] in characteristics" because he did not

10   have cirrhosis of the liver in 2006, but because his due process rights were violated, his health

11   worsened and he sustained permanent physical injury.  (ECF No. 116 at 2-3.)

12   Plaintiff previously provided a copy of Hepatitis C treatment and testing results

13   demonstrating he was receiving Ribavirin dosing while he was housed at CSP-SOL.  (ECF No.

14   95 at 34-35.)  While he was housed at CSP-Corcoran, a medical record reflects that, "Dr. Wang

15   discontinued your Hepatitis C medications because "you don't need them anymore."  (ECF No.

16   95 at 38.)  Plaintiff provided an appeal response confirming that plaintiff's Hepatitis C treatment

17   was discontinued at PBSP.  (ECF No. 95 at 39.)

18                   a.  Northern District § 1983 Action - Case No. C092328

19   In an amended complaint filed on November 5, 2009, in the United States District Court

20   for the Northern District of California ("Northern District"), plaintiff sued medical professionals

21   at CSP-SOL, CSP-Corcoran, and PBSP claiming such individuals were deliberately indifferent to

22   plaintiff's Hepatitis C, in violation of plaintiff's Eighth Amendment rights.  (ECF No. 115-2 at

23   38-41.)  Specifically, plaintiff alleged that Dr. Rowe discontinued plaintiff's Hepatitis C treatment

24   in PBSP in July of 2008, and that Dr. Sayre, Chief Medical Officer, and Nurse Practitioner

25   Risenhoover agreed with the decision of Dr. Rowe.  (ECF No. 115-2 at 3.)

26   On July 28, 2010, the district court screened plaintiff's amended complaint, and dismissed

27   as improperly joined plaintiff's claims concerning the care he received at CSP-SOL and CSP-

28   Corcoran, noting that the adequacy of medical care at those prisons would be judged based on

1   plaintiff's medical condition while housed there.  (ECF No. 115-2 at 63.)  The district court found

2   that plaintiff's medical care at PBSP concerned a unique inquiry:  "whether treatment stopped

3   when it was determined that [plaintiff] was a 'non-responder' amounted to deliberate

4   indifference."  (ECF No. 115-2 at 63.)

5        In addressing the medical defendants' motion for summary judgment, the district court

6   described the protocol for the treatment of inmates with Hepatitis C at PBSP from May 2004 to

7   February 2010, noting that inmates whose test results do not show sufficient reductions in viral

8   loads for three months are considered "non-responders," and the combination therapy must be

9   discontinued.  (ECF No. 115-2 at 69.)

10       The Northern District court found undisputed the following facts:

11       Plaintiff was diagnosed in June 2007 as having grade 3-4 Hepatitis C, and therapy began

12   on July 19, 2007, while he was housed at CSP-SOL.  (ECF No. 115-2 at 69.)  On or about May 9,

13   2008, plaintiff was transferred to CSP-Corcoran, where he received some therapy, but which was

14   stopped in May of 2008.  (ECF No. 115-2 at 70.)  Plaintiff's viral load had increased between

15   October 2007 and February 2008; thus, his treatment was stopped because he was a non-

16   responder.  (Id.)

17       Plaintiff was transferred to PBSP on June 10, 2008;[2] because medical staff did not yet

18   have plaintiff's medical records, the anti-viral therapy was started again as a precautionary

19   measure.  (ECF No. 115-2 at 70.)  Once medical staff reviewed plaintiff's medical records

20   showing that plaintiff was a non-responder, and test results showed that he remained a non-

21   responder, plaintiff's therapy was again stopped on July 24, 2008.  (ECF No. 115-2 at 70.)

22       Because plaintiff had very advanced liver damage, the medical providers consulted with

23   University of California San Francisco ("UCSF") liver specialists, who recommended anti-viral

24   therapy be tried again.  (ECF No. 115-2 at 71.)  On April 13, 2009, therapy began again, but after

25   three months, his viral count had not dropped the required amount.  Dr. Imperial, an expert at

26

_____

27   [2]  The district court also found undisputed that the three week disruption in therapy, before
     plaintiff was transferred to PBSP and treatment was resumed in mid-June, would not have
28   increased plaintiff's viral load.  (ECF No. 115-2 at 71.)

UCSF, recommended plaintiff be given one last try with a higher dose of medication.  Plaintiff received the higher dose for another three months, but his viral count again did not decrease. After consultation with UCSF experts, plaintiff's therapy was discontinued on or about October 29, 2009, because he was a non-responder.  (ECF No. 115-2 at 71.)  The district court noted that Dr. Sayre "summed up the grim state of affairs," stating:

> This last round of therapy was well beyond what is required under the CDCR protocol.  It was university-level therapy at the cusp of current treatment, given under the direction of Dr. Imperial and with her follow-up of the results.  The best therapy currently available to treat Hepatitis C does not work on Jimenez.  There is nothing in our present state of medical knowledge that can cure him of Hepatitis C.

(ECF No. 115-2 at 72.)

Based on such undisputed facts, the Northern District court granted the motion for summary judgment on July 25, 2011, finding that "no reasonable jury could find in Jimenez's favor on his Eighth Amendment claim."  (ECF No. 115-2 at 75.)

            b. Discussion

In plaintiff's operative pleading, he claims his placement in the PBSP SHU deprived him of medical treatment allegedly required for his Hepatitis C.  However, the issue of plaintiff's medical treatment for Hepatitis C while housed in the PBSP SHU was resolved against him by the Northern District court in Case No. C092328 on July 25, 2011.  Such claim plainly invokes plaintiff's alleged primary right to receive medical treatment for his Hepatitis C – the same right which is at issue in this case, and the claim is predicated on the same core facts.  Thus, plaintiff's allegation that defendants deprived him of treatment for his Hepatitis C by placing him in the PBSP SHU is inconsistent with the Northern District's July 25, 2011 conclusion on the same issue.  The Northern District decision is final, and was rendered on the merits.  Plaintiff, the party against whom res judicata is asserted, was the unsuccessful party in the prior § 1983 action. Therefore, the plaintiff is the same in both actions, and privity is satisfied.

Thus, plaintiff is barred from raising his Eighth Amendment claim concerning Hepatitis C treatment at PBSP in this action.

////

1                                   ii. <u>Due Process</u>

2                                   a. <u>Del Norte Superior Court Case No. HCPB 09-5058</u>

3              The record reflects that plaintiff challenged the 2007 gang validation decision in his state

4     habeas petition filed in Del Norte County Superior Court on March 24, 2009.  (ECF No. 115-2 at

5     4-11.)  Specifically, plaintiff challenged the reliability and accuracy of the source items used to

6     validate him as a gang member, and claimed he was denied adequate notice and an opportunity to

7     be heard.  (ECF No. 115-2 at 4-7.)  The Del Norte Superior Court ordered the respondent to show

8     cause why the petition should not be granted, and appointed counsel to represent plaintiff.  (ECF

9     No. 115-2 at 9.)  In the return to the order to show cause, the warden argued that plaintiff received

10    all the process he was due, and provided confidential information under seal for the superior court

11    to review *in camera*.  (ECF No. 115-2 at 12.)  The warden discussed the source items used to

12    validate plaintiff as a gang member, and explained how each item satisfied the criteria for

13    reliability.  (ECF No. 115-2 at 13-15; 17-18.)  The warden submitted evidence showing that on

14    October 16, 2006, Officer Whitfield provided plaintiff with the source items and told plaintiff that

15    Whitfield would return in 24 hours to discuss the documents, but when Whitfield returned 24

16    hours later, plaintiff refused to discuss the documents.  (ECF No. 115-2 at 15:11-17.)

17             Plaintiff's appointed counsel filed a traverse, denying that the source items were sufficient

18    to validate plaintiff as a gang member, or that the source information was timely provided, and

19    requested an *in camera* review of the source items during which counsel could lodge his

20    objections thereto.  (ECF No. 115-2 at 26-27; 28-31.)  In addition to the Eighth Amendment,

21    counsel relied on the Due Process Clause.  (ECF No. 115-2 at 28-31.)  Further, counsel appended

22    the declaration of plaintiff (ECF No. 115-2 at 34), pointing out that the declaration "establish[ed]

23    further issues of disputed fact as to timing of notice and waiver of rights to the end that a hearing

24    is needed since not all issues are solely ones of law, but also of fact."  (ECF No. 115-2 at 31.)

25    The traverse was signed June 23, 2009.  (ECF No. 115-2 at 31.)

26    ////

27    ////

28    ////

1    On July 14, 2009, the Del Norte County Superior Court issued the following order:

2       The Petition is denied, and the Order to Show Cause is discharged.

3       Ample evidence supported the administrative decision.  No abuse
        of administrative discretion is shown.

4

5    (ECF No. 115-2 at 36.)

6                            b.  Discussion

7    Issue preclusion does not bar plaintiff's first due process claim, but does bar plaintiff's

8    remaining due process claims.

9        First, as to all of his due process claims, the privity element is satisfied even if Warden R.

10   Horel was the only party named in plaintiff's habeas petition.  See Sunshine Anthracite Coal Co.

11   v. Adkins, 310 U.S. 381 (1940) ("There is privity between officers of the same government so

12   that a judgment in a suit between a party and a representative of the United States is res judicata

13   in relitigation of the same issue between that party and another officer of the government.")  See

14   also Hutchison v. California Prison Indus. Auth., 2015 WL 179790, at *3-4 (N.D. Cal. Jan. 14,

15   2015) (privity existed between state prison system employees who were employed by same state

16   agencies and engaged in the same conduct).  Also, plaintiff was the petitioner in his prior habeas

17   petition and is the claimant herein.

18       Second, the previous state habeas petition raised both due process claims at issue in this

19   case, namely:  (1) the failure to grant him an opportunity to be heard; and (2) the sufficiency and

20   reliability of the evidence used to validate him as a gang member.  Both claims plainly invoke his

21   primary right to be free from gang validation and SHU confinement without adequate due process

22   – the same right which is at issue in this case.  Further, the due process claims are predicated on

23   the same core facts.

24       Third, plaintiff's habeas petition resulted in a final judgment on the merits.  "[R]easoned

25   denials of California habeas petitions" have claim-preclusive effect.  Gonzales, 739 F.3d at 1231.

26   Such denials also have issue-preclusive effects.  "[B]ecause of the nature of a state habeas

27   proceeding, a decision actually rendered should preclude an identical issue from being relitigated

28   in a subsequent § 1983 action if the state habeas court afforded a full and fair opportunity for the

                                        12

1    issue to be heard and determined under federal standards."  Silverton v. Dep't. of the Treasury,

2    644 F.2d 1341, 1347 (9th Cir. 1981).  In Gonzales, the Ninth Circuit recognized that Silverton

3    stands for the proposition that a decision actually rendered in a California habeas action precludes

4    an identical issue from being re-litigated in a subsequent § 1983 action if the habeas court

5    afforded a full and fair opportunity for the issue to be heard.  Gonzales, 739 F.3d at 1231.

6           Here, the Del Norte Superior Court's decision demonstrates that plaintiff's challenge to

7    the source items used to validate him as a gang member received a full and fair hearing, and was

8    decided on the merits.  In addition, the claims based on an alleged wrongful review of such

9    evidence are also barred because the state court found that there was ample evidence to support

10   the gang validation decision.  Thus, all such due process claims are barred by res judicata.

11          However, the superior court's ruling does not reflect a decision on plaintiff's claim that

12   defendant Whitfield failed to provide plaintiff an opportunity to be heard, or that such claim was

13   actually decided on the merits.  Because of the procedural history of this case, set forth above,

14   and the parties' stipulation that a material dispute of fact exists as to whether defendant Whitfield

15   granted plaintiff an opportunity to be heard before the gang validation decision, this court must

16   narrowly view the state court's decision on plaintiff's habeas petition.  Plaintiff's traverse filed in

17   the superior court reflects that counsel requested a hearing so that the superior court could address

18   disputes of fact concerning "timing of notice" and "waiver of rights."  Here, defendants provide

19   no evidence that the Del Norte Superior Court took evidence concerning these factual disputes, or

20   held a hearing to resolve such factual disputes.[3]  Therefore, because it does not appear that

21   plaintiff was provided a full and fair opportunity to litigate the issue of whether defendant

22   Whitfield afforded plaintiff an opportunity to be heard before plaintiff was validated as a gang

23   member, and the brief decision by the superior court does not reflect that such due process issue

24   was necessarily decided on the merits, or under federal due process standards, the undersigned

25   recommends that such claim is not barred by res judicata.

26

27   _____
     [3]  The traverse was signed on June 23, 2009, and the superior court's decision was entered on July
28   14, 2009, only 21 days later.  Given plaintiff's incarceration, this 21 day period suggests no
     hearing was held.

1    Defendants argue that even a summary denial by a California court may preclude a later

2    civil action if the court considered the merits of the habeas claims, citing In re Clark, 5 Cal. 4th

3    750, 769-70 & n.9 (Cal. 1993).  However, defendants did not address Gonzalez or explain how

4    plaintiff was afforded a full and fair opportunity for the alleged failure to provide him an

5    opportunity to be heard, or that the disputed factual issue was necessarily decided and determined

6    under federal standards, as required under Silverton.

7    The argument raised by plaintiff against claim preclusion on the remaining due process

8    claims is unpersuasive.  He appears to argue that defendants delayed raising the affirmative

9    defense of res judicata and should not be allowed to invoke the argument now because it is

10    "unfair."  (ECF No. 116 at 3.)  However, defendants timely raised the affirmative defense of res

11    judicata/issue preclusion in their answer filed on June 8, 2011.  (ECF No. 32 at 2.)

12    Therefore, because plaintiff's due process challenges to the sufficiency or validity of the

13    evidence was previously decided in his state habeas petition, such due process claims are barred

14    and should be dismissed with prejudice.  Defendants' motion to dismiss plaintiff's claim that

15    defendant Whitfield failed to provide plaintiff an opportunity to be heard should be denied.

16    D.  Failure to State a Claim

17    Finally, defendants argue that plaintiff's remaining Eighth Amendment claims based on

18    poor housing conditions in the CSP-SOL SHU fail because he alleges no facts linking any

19    defendant to such conditions or showing that the conditions caused him harm.  Also, defendants

20    state that plaintiff's claim that he had no access to education while housed in the SHU fails as a

21    matter of law because plaintiff has no constitutional right to education in prison.  (ECF No. 115-1

22    at 9, n.2.)

23    The Civil Rights Act under which this action was filed provides as follows:

24    Every person who, under color of [state law] . . . subjects, or causes
     to be subjected, any citizen of the United States . . . to the
25    deprivation of any rights, privileges, or immunities secured by the
     Constitution . . . shall be liable to the party injured in an action at
26    law, suit in equity, or other proper proceeding for redress.

27    42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

28    actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

14

1  Monell v. Department of Social Servs., 436 U.S. 658 (1978) ("Congress did not intend § 1983

2  liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no

3  affirmative link between the incidents of police misconduct and the adoption of any plan or policy

4  demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another

5  to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an

6  affirmative act, participates in another's affirmative acts or omits to perform an act which he is

7  legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy,

8  588 F.2d 740, 743 (9th Cir. 1978).

9          Although supervisory government officials may not be held liable for the unconstitutional

10  conduct of their subordinates under a theory of respondeat superior, Ashcroft v. Iqbal, 556 U.S.

11  662, 676 (2009), they may be individually liable under Section 1983 if there exists "either (1) [the

12  supervisor's] personal involvement in the constitutional deprivation; or (2) a sufficient causal

13  connection between the supervisor's wrongful conduct and the constitutional violation."  Hansen

14  v. Black, 885 F.2d 642, 646 (9th Cir. 1989).  The requisite causal connection between a

15  supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be

16  established in a number of ways, including by demonstrating that a supervisor's own culpable

17  action or inaction in the training, supervision, or control of his subordinates was a cause of

18  plaintiff's injury.  Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011); Larez v. City of Los

19  Angeles, 946 F.2d 630, 646 (9th Cir. 1991).  A plaintiff must also show that the supervisor had

20  the requisite state of mind to establish liability, which turns on the requirement of the particular

21  claim -- and, more specifically, on the state of mind required by the particular claim -- not on a

22  generally applicable concept of supervisory liability.  Oregon State University Student Alliance v.

23  Ray, 699 F.3d 1053, 1071 (9th Cir. 2012).

24          Defendants are correct that prisoners have no constitutional right to education.  Rhodes v.

25  Chapman, 452 U.S. 337, 348 (1981) (deprivation of rehabilitation and educational programs does

26  not violate Eighth Amendment).  Thus, plaintiff's Eighth Amendment claim that he was denied

27  access to education must be dismissed.

28  ////

Plaintiff again failed to allege any facts demonstrating that any of the named defendants were responsible for housing conditions in the SHU at CSP-SOL, or that plaintiff suffered injury as a result of such conditions. (ECF No. 104, *passim*.) In opposition to the motion, plaintiff provided the declaration of another inmate concerning the conditions of housing in the SHU. (ECF No. 116 at 4.) However, plaintiff did not address the individual responsibility of the defendants, if any, in connection with the alleged housing conditions, and failed to identify any injury plaintiff allegedly sustained as a result of such conditions. (ECF No. 116.) As plaintiff has been repeatedly informed, he must allege facts showing some affirmative act on the part of defendants that deprived him of a constitutional right. (ECF Nos. 94 at 3-4; 100 at 2; 102 at 9.) It is not enough to state that defendants were aware of the conditions, or should have known of the alleged constitutional violations. Thus, plaintiff's Eighth Amendment claims based on the conditions of the SHU housing at CSP-SOL are dismissed for failure to state a claim.

E. Leave to Amend - Conditions of Confinement Claim

If the court finds that a complaint or claim should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (*en banc*). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citation omitted). However, if, after careful consideration, it is clear that a claim cannot be cured by amendment, the court may dismiss without leave to amend. Cato, 70 F.3d at 1005-06.

Here, since December 16, 2014, plaintiff has been provided numerous opportunities to amend his complaint. Plaintiff was previously informed that he must link or connect each named defendant to the alleged Eighth Amendment violations. (ECF Nos. 94 at 3-4; 100 at 2; 102 at 9.) Defendants Bond, Whitfield, Sisto, and Sequira were involved in the gang validation process, and defendants Melgoza, Singh, and Grannis were involved in resolving administrative appeals concerning the gang validation. Plaintiff identified no acts or omissions tying any of these

16

1    defendants to the housing conditions in the SHU at CSP-SOL.  Moreover, given the stale nature

2    of such claims, the undersigned would not be inclined to grant a motion to name any new

3    defendants, over eleven years after plaintiff was housed in the SHU at CSP-SOL in 2005.

4           For all of these reasons, the undersigned recommends that plaintiff not be granted leave to

5    file a sixth amended complaint.

6    IV.  Conclusion

7           IT IS HEREBY ORDERED that defendants' request to take judicial notice (ECF No. 115-

8    2) is granted; and

9           IT IS RECOMMENDED that:

10          1.  Defendants' motion to dismiss (ECF No. 115) be granted in part, and denied in part, as

11   follows:

12                 a.  Defendants' motion to dismiss, as barred by res judicata, plaintiff's claim that

13   defendant Whitfield did not provide plaintiff with an opportunity to be heard regarding the

14   evidence used to classify plaintiff as a gang member, be denied;

15                 b.  Plaintiff's Eighth Amendment claims concerning treatment for Hepatitis C at

16   PBSP, and his remaining due process claims concerning the sufficiency and reliability of the

17   evidence used to validate him as a gang member, are barred by the doctrine of res judicata, and

18   should be dismissed with prejudice; and

19                 c.  Plaintiff's remaining conditions of confinement claims concerning his housing

20   in the SHU at CSP-SOL be dismissed, with prejudice, for failure to state a claim.

21          2.  Defendant Whitfield be required to answer plaintiff's claim that defendant Whitfield

22   did not provide plaintiff with an opportunity to be heard within fourteen days from any district

23   court order adopting these findings and recommendations.

24          These findings and recommendations are submitted to the United States District Judge

25   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

26   after being served with these findings and recommendations, any party may file written

27   objections with the court and serve a copy on all parties.  Such a document should be captioned

28   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

17

1    objections shall be filed and served within fourteen days after service of the objections.  The

2    parties are advised that failure to file objections within the specified time may waive the right to

3    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4    Dated:  January 12, 2017

5

6    KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

7

8    /jime2943.mtd.resj

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18